**Fred WILLIS et al., Plaintiffs,**

v.

**Harbert WALKER, Superintendent of Public Schools, et al., Defendants.**

**No. 545.**

United States District Court
W. D. Kentucky,
Bowling Green Division.

Nov. 29, 1955.

See also 136 F.Supp. 181.

James A. Crumlin, J. Earl Dearing, Louisville, Ky., for plaintiffs.

Parker Duncan, Paul Huddleston, Bowling Green, Ky., Earl Huddleston, Columbia, Ky., for defendants.

SWINFORD, District Judge.

The plaintiffs are Negro citizens of the United States and of the Commonwealth of Kentucky. They are residents of Adair County, near Columbia, Kentucky. Fourteen of the plaintiffs satisfy all requirements for admission to the High School of Adair County. Thirteen of the plaintiffs satisfy all requirements for admission to the elementary school of Adair County, Columbia District. The adult plaintiffs are not applicants for admission but are the parents or guardi-

ans of the infant plaintiffs. The plaintiffs bring this action pursuant to Rule 23(a) (3), Federal Rules of Civil Procedure, 28 U.S.C., for themselves and on behalf of all other Negroes similarly situated whose numbers make it impracticable to bring them all before the court.

The jurisdiction of the court is invoked under 28 U.S.C. § 1331. The action arises under the Fourteenth Amendment of the Constitution of the United States, § 1, and 42 U.S.C.A. § 1981. The jurisdiction of the court is also invoked under 28 U.S.C. § 1343.

It is set forth in the complaint that the relief sought is made necessary by reason of the fact that the defendants, the school authorities of Adair County, Kentucky, are denying the plaintiffs their constitutional and civil rights by reason of Section 187 of the Constitution of the Commonwealth of Kentucky and Section 158.020 of the Kentucky Revised Statutes. The statutory section is known as the Day Law. The section of the Kentucky Constitution and the statute make it unlawful for students of the white race and students of the Negro race to attend the same schools.

The plaintiffs invoke the jurisdiction of the court under 28 U.S.C. § 2281 which provides that an interlocutory or permanent injunction restraining the enforcement of a state statute by an officer of the state cannot be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges as constituted under the provisions of 28 U.S.C. § 2284. The complaint prays that a three-judge court be convened to hear this case as required by 28 U.S.C. §§ 2281, 2284.

In compliance with the prayer of the complaint, a three-judge court was convened and this three-judge court heard the case on its merits. It was understood at the time of the hearing that the court had serious doubt of its jurisdiction as a three-judge court; that it would proceed to hear the case and determine the issue of jurisdiction first; and that if it should be determined that the court was without jurisdiction, the case would then stand submitted to the judge of the Bowling Green court to pass upon the issues of law and fact presented by the record.

It was determined by the three-judge court that it was without jurisdiction. This decision was based upon the fact that the pleadings disclosed that the defendants were not relying either upon the constitutional provision of the Kentucky Constitution or upon the Day Law. It was stated in open court by counsel for the defendants that no reliance was placed upon the Kentucky laws as a defense and that in fact the defendants conceded the unconstitutionality, under the Federal Constitution, of both Section 187 of the Kentucky Constitution and KRS 158.020 on the authority of the decision of the United States Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 692, 98 L.Ed. 873.

In consequence of the decision of the three-judge court, the case now stands submitted for decision by this court.

In Brown v. Board of Education, supra, the decision was announced on May 17, 1954. It thereby became the law that segregation of white and Negro children in all public schools in the United States was abolished. In the opinion the Court well said: "Because these are class actions, because of the wide applicability of this decision, and because of the great variety of local conditions, the formulation of decrees in these cases presents problems of considerable complexity."

On May 31, 1955, the Supreme Court handed down its second opinion in the cases before it in Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 756.

The Court, recognizing the full import of its earlier decision and the fact that it was dealing with a long-standing tradition and varied local problems which must be considered in making this transition, sought to set out guiding principles of law and equity by which this change might be effected with the least

possible difficulty. I quote from the opinion as follows:

"Full implementation of these constitutional principles may require solution of varied local school problems. School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles. Because of their proximity to local conditions and the possible need for further hearings, the courts which originally heard these cases can best perform this judicial appraisal. Accordingly, we believe it appropriate to remand the cases to those courts.

"In fashioning and effectuating the decrees, the courts will be guided by equitable principles. Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs. These cases call for the exercise of these traditional attributes of equity power. At stake is the personal interest of the plaintiffs in admission to public schools as soon as practicable on a nondiscriminatory basis. To effectuate this interest may call for elimination of a variety of obstacles in making the transition to school systems operated in accordance with the constitutional principles set forth in our May 17, 1954, decision. Courts of equity may properly take into account the public interest in the elimination of such obstacles in a systematic and effective manner. But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them.

"While giving weight to these public and private considerations, the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. Once such a start has been made, the courts may find that additional time is necessary to carry out the ruling in an effective manner. The burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date. To that end, the courts may consider problems related to administration, arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a nonracial basis, and revision of local laws and regulations which may be necessary in solving the foregoing problems. They will also consider the adequacy of any plans the defendants may propose to meet these problems and to effectuate a transition to a racially nondiscriminatory school system. During this period of transition, the courts will retain jurisdiction of these cases."

I will endeavor to determine the issues presented by the record here in the light of the principles stated by our highest Court.

It is disclosed by the record that there are thirty-four high school pupils who are eligible for admission. There is a consolidated high school in Adair County which was built and equipped within the past three years at a cost of $458,000.

There is a consolidated grade school in the City of Columbia with an enrollment of 640 pupils. In addition to this consolidated grade school there are 50 one-room schools for white children, six one-room and one two-room grade schools for Negro children. There are 207 Negro children who qualify for the elementary school work. The record is clear that these schools for the white children are crowded and many of them have substandard conditions. It is also clear from the record that the schools for the

Negro children are sub-standard, although it is testified by certain witnesses that the conditions of the Negro children are in some instances better than those for the white children.

On July 15, 1955, the plaintiffs petitioned the Board of Education of Adair County, Columbia District, to abolish segregation in the schools in their district. On August 29, 1955, the plaintiffs and other Negro children were received and registered in both the high and elementary schools of Adair County, Columbia District. On August 30, 1955, the principals of both the elementary and high schools, acting under the orders of the superintendent and the Board of Education, ejected the plaintiffs and all Negro children who had previously registered. The record discloses that since that time white children have been admitted to the schools. It is clear from the record that the only reason these plaintiffs and those for whom they plead were denied was because they were Negroes.

I am of the opinion that a distinction may be made between the elementary and high school pupils. With a new high school building the integration of thirty-four Negro children should not be delayed longer. It is true that the County Board has offered to send them to the county seat of an adjoining county for their high school work. This is a denial of their rights under the Supreme Court decision. It is an application of the doctrine "separate but equal" as announced by the Supreme Court in Plessy v. Ferguson, 163 U.S. 537, 16 S.Ct. 1138, 1144, 41 L.Ed. 256, back in 1896, and which was apparently abolished in Brown v. Board of Education, supra, on May 17, 1954. While the court is entirely mindful of the problems confronting the defendants, I must also recognize the directive imposed upon this court by the Supreme Court when it said: "While giving weight to these public and private considerations, the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling."

■ There are apparently no high school facilities for Negro pupils in Adair County. The high school pupils are therefore being denied at this time the rights guaranteed to them by our Constitution. Education is a thing that cannot wait and pupils of proper age are entitled to immediate consideration. It will be the ruling of this court that the Negro high school children should be admitted to the high school by February 1, 1956.

The matter of the elementary pupils presents a somewhat different question. In the first place, there are a great many more of these pupils than of the high school pupils and I am of the opinion that the situation as to them is not as acute as is the question of the high school pupils. The record discloses that there are approximately 2,000 white children who are using 50 one-room schools and 207 Negro children using seven small schools. It is true that many white children are hauled by bus from distances of as much as seven miles to the Columbia Grade Center while Negro children are living within walking distance of this school. However, from the record it does not appear that these Negro children are being denied the educational opportunities afforded by the county to any greater extent than are many hundreds of white children. I think, however, that the school authorities, in the light of the knowledge which they have had of this situation and in the light of their understanding of the law of the land since May 17, 1954, should not overlook the fact that "at stake is the personal interest of the plaintiffs in admission to public schools as soon as practicable on a nondiscriminatory basis" and that "the burden rests upon the defendants to establish that such time is necessary in the public interest and is consistent with good faith compliance at the earliest practicable date".

■ I am of the opinion that an integration of the elementary schools in Columbia and Adair County should be effective with the beginning of the school year in August or September, 1956. I

put this August or September as it is apparent some registration is had in Adair County in August.

■ The defendants, by their answers, plead the overcrowding of existing school buildings and the inadequacy of transportation facilities. I think that these conditions are to be taken into consideration by the court in fixing a date for integration, but I do not think either of them is a defense for unlimited delay. That is especially true when the record reflects, as here, that no white children, either before or after the application for admission of the plaintiffs, were denied admission.

■ It is further pleaded by the defendants that they contemplate the construction, reconstruction or enlargement of the school buildings within the district and that the Adair County Board of Education has adopted a resolution requesting the Adair County Fiscal Court to submit to the voters of Adair County the question as to whether an annual special school building tax shall be levied in the district for a period of twenty-five years in order to meet the cost of construction and equipment. It is also pleaded that the Board contemplates the leasing or purchase of additional busses but that it is without funds. It anticipates that such funds will be available if the necessary appropriations are made by the General Assembly of the Commonwealth of Kentucky. These plans are laudable and it is hoped they will eventually be carried out. It must be admitted, however, that such plans are rather vague and indefinite and depend for their ultimate success upon so many varied elements that they cannot be considered as lawful grounds for delay of the mandate laid down by the Supreme Court. The court does not question the good faith of the defendants but good faith alone is not the test. There must be "compliance at the earliest practicable date".

The attorneys for the plaintiffs will prepare and submit without delay findings of fact, conclusions of law and judgment in conformity with this opinion.