**Ruth BOOKER, an Infant, by Dovie Booker, Her Mother and Next Friend, et al., Appellants,**

v.

**STATE OF TENNESSEE BOARD OF EDUCATION et al., Appellees.**

**No. 12775.**

United States Court of Appeals
Sixth Circuit.

Jan. 14, 1957.

Robert L. Carter, New York City (J. F. Estes, B. L. Hooks, A. W. Willis, Jr., Memphis, Tenn., and Z. Alexander Looby, Nashville, Tenn., on the brief; H. T. Lockard, Memphis, Tenn., Thurgood Marshall, New York City, of counsel), for appellants.

Nat Tipton, Advocate Gen. of Tennessee, Nashville, Tenn. (George F. McCanless, Atty. Gen. of Tennessee, Allison B. Humphreys, Jr., Nashville, Tenn., on the brief), for appellees.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This case arises upon complaint of five plaintiffs, members of the colored race, praying for a permanent injunction to restrain the Board of Education of the State of Tennessee, officials of such Board, and the president and registrar of Memphis State College, from refusing to admit plaintiffs to Memphis State College solely because of their race.[1] The facts are not in controversy. The findings of fact entered by the District Court are given in the margin.[2]

1. The parties will be denominated as in the court below.

2. "1. That the Tennessee State Board of Education intends promptly to comply with the decision and opinion of the Supreme Court of the United States in the segregation cases and, pursuant to such intention, and in good faith, has devised the plan hereinafter referred to, after consultation with advisory groups representing various segments of affected interests.

"2. There was no intention or effort upon the part of the said Board to evade or circumvent the decision of the Supreme Court, but, after full discussion, the Board concluded the plan proposed was the most feasible in view of the physical capacities and financial situation of the various schools under its jurisdiction.

"3. Memphis State College at present has the largest enrollment in its history and its physical facilities would be inadequate, should unrestricted admission be decreed.

"4. At present, this institution has not been allocated enough funds from the State upon which its existence depends and which constitutes the major portion of its financial support, to authorize unrestricted integration and to allow it to operate should such be done.

"5. Memphis State College is located in the portion of the State in which the colored race maintains its highest density of population and is therefore subjected to the potential of a heavy enrollment from members of the colored race.

"6. Memphis State College is a member of the State Association of Colleges whose rules require certain standards by all its members. The loss of membership in this association will result in students who take courses at Memphis State College being deprived of credit for work done in such college should they desire to transfer to another member of the association or other similar associations. Virtually all institutions of collegiate standing in the United States are members of this or similar associations. Memphis State College does not now and will not prior to July 1, 1957, have adequate finances to enable it to maintain its membership in this association should there be the increase in applications for instruction therein which very reasonably may flow from unrestricted ad-

All plaintiffs are residents of the city of Memphis, in the Western Division of the State of Tennessee, and also in the district served by Memphis State College, a public educational institution of the State of Tennessee. As to educational requirements it is conceded that plaintiffs are fully qualified for admission to the college and that they have been denied admission solely because of their color. It is the policy of the State of Tennessee to maintain Memphis State College for the education, exclusively, of white persons. This policy is required under Article 11, Section 12, of the Tennessee Constitution of 1870, the pertinent part of which reads as follows:

"* * * No school established or aided under this section shall allow white and negro children to be received as scholars together in the same school."

It also is required under Sections 11395 and 11396 of the Code of Tennessee which read as follows:

"Unlawful for white and colored persons to attend same school.—It shall be unlawful for any school, academy, college, or other place of learning to allow white and colored persons to attend the same school, academy, college, or other place of learning.

"Unlawful for teacher to allow such mixed attendance or to teach them in same class.—It shall be unlawful for any teacher, professor, or educator in any college, academy, or school of learning, to allow the white and colored races to attend the same school, or for any teacher or educator, or other person to instruct or teach both the white and colored races in the same class, school, or college building, or in any other place or places of learning, or allow or permit the same to be done with their knowledge, consent, or procurement."

■■ The complaint prayed that the District Court convene a three-judge district court under Title 28, U.S.C., Sections 2281 and 2284, 28 U.S.C.A. §§ 2281, 2284, to hear the case, but this application was refused. Plaintiffs contend that under the Federal Constitution, particularly the Fourteenth Amendment, the validity of the Tennessee segregation statutes and state constitution was directly involved and a three-judge court was therefore required. However, the gist of the controversy was factual, namely, the existence of alleged discrimination under the Fourteenth Amendment. Moreover, the constitutional contention no longer presents a question of substance. It is essential to the jurisdiction of the federal court in three-judge cases that a substantial federal question be presented. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 4, 78 L.Ed. 152. The Supreme Court there pointed out that a federal question may be unsubstantial "because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject * * *.'" This is the precise situation here presented. The previous decisions of the Supreme Court, Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, have

mission. Due to its location and the high percentage of eligible colored students, a considerable increase in applications to it from qualified students of this race may be expected.

"7. The Court further finds that since 1870 the State of Tennessee has pursued a course of segregated schools between the two races and that during this interval customs have arisen between the two races, which might be disturbed seriously by an abrupt abrogation thereof. The Court finds that a gradual plan of desegregation in its opinion offers greater possibility of eventual complete acceptance of the situation by members of both races than would an abrupt transition at present.

"8. The Court also finds that the respondent members of the Board are proceeding with all deliberate speed in order to complete orderly and peaceful integration. The Court also finds that time is absolutely necessary to carry out in an effective manner the ruling of the Supreme Court."

foreclosed the subject. As declared in the latter decision, all provisions of federal, state, or local law requiring or permitting discrimination on the ground of race or color in public educational institutions must yield to the principle that racial discrimination in public education is unconstitutional. The District Court correctly held that the invalidity of the Tennessee constitutional provisions and statutes providing for segregation is "patent" and that a three-judge court was not required. In accord with this conclusion are Wichita Falls Junior College District v. Battle, 5 Cir., 204 F.2d 632, certiorari denied 347 U.S. 974, 74 S.Ct. 783, 98 L.Ed. 1114, and the final decision in Board of Supervisors, etc., v. Tureaud, 5 Cir., 228 F.2d 895. This case was heard en banc and six judges concurred in the conclusion that a hearing by a three-judge court was not required to decide a factual question of discrimination.

As the District Court had jurisdiction it properly proceeded with the trial. The principal issue was factual, namely, whether continuation of discrimination prohibited by the equal protection clause of the Fourteenth Amendment was contemplated by the proposed plan. The District Court decided that the plan devised by defendants for the integration of the races is in all respects fair and reasonable, and denied the injunction prayed for.

The defense to the action was based upon the ground that Memphis State College is not physically equipped to handle a freshman class in excess of 1,000 students, that if all persons qualified for such admission are admitted without restriction an overtaxation of the physical facilities now available will result, and that such an overtaxation of facilities will result in the school being deprived of its accredited standing and membership in the Southern Association of Colleges. Defendants also aver that Memphis State College is financed by appropriations made by the General Assembly of the State of Tennessee and has no other source of income except tuitions and other fees. They point out that the General Assembly, for the period of July 1, 1955, until July 1, 1957, has made appropriations which are completely inadequate if all the available students in Shelby County alone undertake to enroll in the college. Citing the decision of the Supreme Court, Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, that courts of equity in providing for desegregation in a systematic and effective manner may consider problems related to administration arising from the physical condition of the school plant, the school transportation system, personnel, revision of school districts and attendance areas into compact units to achieve a system of determining admission to the public schools on a non-racial basis, the Board in a formal resolution has adopted the following program of transition to desegregation:

"For the scholastic year 1955–56, qualified negro students shall be admitted to do graduate work at Memphis State College, Middle Tennessee State College, East Tennessee State College and Austin Peay State College. During the said scholastic year, qualified white students shall be admitted to graduate classes of the Tennessee Agricultural and Industrial State University for Negroes at Nashville.

"For the scholastic year 1956–57, qualified negro students shall be admitted to the graduate classes and senior classes of Memphis State College, Middle Tennessee State College, East Tennessee State College, Austin Peay State College and Tennessee Polytechnic Institute at Cookeville. During the said scholastic year, qualified white students shall be admitted to graduate classes and senior classes of the Tennessee Agricultural and Industrial State University for Negroes at Nashville.

"For the scholastic year 1957–58, qualified negro students shall be admitted to the graduate, senior and junior classes of Memphis State College, Middle Tennessee State College, East Tennessee State College, Austin Peay State College and Tennes-

see Polytechnic Institute at Cookeville. During the said scholastic year, qualified white students shall be admitted to graduate, senior and junior classes of Tennessee Agricultural and Industrial State University for Negroes at Nashville.

"For the scholastic year 1958–59, qualified negro students shall be admitted to the graduate, senior, junior and sophomore classes of Memphis State College, Middle Tennessee State College, East Tennessee State College, Austin Peay State College and Tennessee Polytechnic Institute at Cookeville. During the said scholastic year, qualified white students shall be admitted to graduate, senior, junior and sophomore classes of the Tennessee Agricultural and Industrial State University for Negroes at Nashville.

"For the scholastic year 1959–60, and thereafter, qualified negro students shall be admitted to the graduate, senior, junior, sophomore and freshmen classes of Memphis State College, Middle Tennessee State College, East Tennessee State College, Austin Peay State College and Tennessee Polytechnic Institute at Cookeville. During the said scholastic year, and thereafter, qualified white students shall be admitted to graduate, senior, junior, sophomore and freshmen classes of Tennessee Agricultural and Industrial State University for Negroes at Nashville."

▅▅ Conceding that the Board was moved by proper motives in framing the proposed plan, a majority of the court thinks that in two respects the plan does not comply with the requirements of Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. Although the record shows that the physical facilities of Memphis State College would be inadequate if the student body in the undergraduate school were radically increased, this circumstance is not a valid defense to the action filed. The Board is authorized to establish a limit to the number of admissions, but the Board is not authorized to establish limitations based upon race or color. As stated by Chief Justice Hughes in Missouri ex rel. Gaines v. Canada, 305 U.S. 337, 59 S.Ct. 232, 236, 83 L.Ed. 208, the Board is under an obligation to furnish the training "upon the basis of an equality of right." As held in Sipuel v. Board of Regents of University of Oklahoma, 332 U.S. 631, 68 S.Ct. 299, 92 L.Ed. 247, the state must provide education for plaintiffs under the equal protection clause of the Fourteenth Amendment and must provide it as soon as it does to applicants in any other racial group. The record shows by uncontradicted evidence that 143 nonresidents of Tennessee were enrolled in the Memphis State College for the fall semester of 1955; that 1079 nonresidents of Memphis were currently enrolled in the college. Of the out-of-state students currently enrolled approximately 50 were first-year students and approximately 30 were second-year students. Giving full consideration to the fact that the Legislature has not allocated sufficient funds to the college to authorize unrestricted expansion of the student body, and that such unrestricted expansion might threaten the maintenance of accredited collegiate standing, the majority of the court thinks that defendants' adopted plan proposes to set up a system of admission to the college which does not recognize the rights of these plaintiffs. It would be feasible and legitimate for Memphis State College, in order to prevent overcrowding and loss of accreditation, to limit its substantial out-of-state membership, but the plan contemplates no such limitation. It would be legitimate to limit the size of the student body on a basis nondiscriminatory to any group, or race, but the plan adopted postpones these qualified plaintiffs for five years in their admission to the freshman class, and expressly contemplates that white students who have registered later than these plaintiffs shall be admitted earlier. This is a clear discrimination between the races. It is another form of discrimination that plaintiffs may be compelled to seek education else-

where in order to avoid discrimination and to secure a college education now without being deferred for several years. It is less expensive in time and money for these qualified applicants to attend a college within the district than to be compelled to seek college education elsewhere. An exclusion on account of race and color which forces an applicant otherwise qualified to attend a distant school at greater expense is discriminatory, Wichita Falls Junior College District v. Battle, supra.

■ We are aware of the declarations of the Supreme Court that physical conditions of plant and transportation may be considered in working out an orderly transition from a system of segregation to a system of desegregation. But the court also declared that this should be done with all deliberate speed. To deny entrance to these plaintiffs for five years, to place them at the bottom of the list without regard to the time of their application for entrance, seems to a majority of the court a noncompliance with the declaration of the Supreme Court. Brown v. Board of Education, supra. We think our conclusion is supported in principle by and accords with the late decisions. Gray v. University of Tennessee, D.C., 97 F.Supp. 463. In this case the university decided to admit the appellants as requested, after the District Court had held that the appellants were entitled to relief, and thereupon the case was dismissed as moot by the Supreme Court. Gray v. Board of Trustees of University of Tennessee, 342 U.S. 517, 72 S.Ct. 432, 96 L.Ed. 540; Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884; Lucy v. Adams, 350 U.S. 1, 76 S.Ct. 33; Willis v. Walker, D.C., 136 F.Supp. 177. Cf. Sipuel v. Board of Regents of University of Oklahoma, supra; Sweatt v. Painter, 339 U.S. 629, 70 S.Ct. 848, 94 L.Ed. 1114; McLaurin v. Oklahoma State Regents for Higher Education, 339 U.S. 637, 70 S.Ct. 851, 94 L.Ed. 1149; McKissick v. Carmichael, 4 Cir., 187 F.2d 949, certiorari denied 341 U.S. 951, 71 S.Ct. 1021, 95 L.Ed. 1374.

The judgment of the District Court is reversed and the case is remanded for further proceedings in accordance with the majority opinion.

SHACKELFORD MILLER, Jr., Circuit Judge (dissenting).

The majority opinion suggests different ways in which the physical and financial difficulties involved in immediate integration might be overcome at Memphis State College, and accordingly rejects the plan which does not accomplish that result. That, to me, is not the issue in the case. Admittedly, there may be different solutions to the problem. But if the plan proposed by the school authorities, which provides for partial elimination of segregation at the present time, and additional elimination in each succeeding year, and complete elimination over a period of five years, is a good-faith solution, even though requiring time, it is not to be rejected by the courts. The Supreme Court, in Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083, stated the issue in pointing out that the school authorities "have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles". 349 U.S. at page 299, 75 S.Ct. at page 756. The opinion further stated that the District Court can best perform this judicial appraisal.

The District Judge in exercising the judicial appraisal so delegated to him by the Supreme Court found as facts that there was no effort or intention on the part of the State Board of Education to evade or circumvent the decision of the Supreme Court, that it had devised the proposed plan in *good faith* after consultation with advisory groups representing various segments of affected interests, that on account of the physical, financial and practical problems involved, which are given in detail in its findings, a gradual plan of desegregation offers greater possibility of eventual complete acceptance of the situation by members of both races than would an abrupt transition at present, and that time is absolutely nec-

essary to carry out in an effective manner the ruling of the Supreme Court.

The majority opinion concedes that the facts are not in controversy. Unless the District Judge abused his discretion in approving the plan proposed to meet the problems presented by such a factual background, we are not authorized to reject the plan in order to substitute a different plan of our own. That there are problems, practical as well as physical and financial, can hardly be denied. The District Judge, a long-time resident of Memphis, Tenn., and closely in touch with the local situation, is much better situated to understand, analyze and evaluate the problems than are we. As stated in Brown v. Board of Education, supra, 349 U.S. at page 300, 75 S.Ct. at page 756, that while there is a duty upon the school authorities to make a prompt and reasonable start toward full compliance with its ruling, "Once such a start has been made, the courts may find that additional time is necessary to carry out the ruling in an effective manner." The District Judge expressly found that time was absolutely necessary to carry out the ruling in an effective manner. I am of the opinion that there was no abuse of discretion on the part of the District Judge and that the judgment should be affirmed.